UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**STEPHEN J. KOMOREK,** *et al.,*

       **Plaintiffs,**

   **v.**

**CONFLICT INTERNATIONAL, INC.,** *et al.*,

       **Defendants.**

**Case No. 2:24-cv-1227**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Elizabeth P. Deavers**

### OPINION AND ORDER

Plaintiffs Stephen J. Komorek and his company, API International Consulting Group, Inc., bring fourteen causes of action ranging from federal RICO claims to common law defamation and other tort claims against twelve Defendants. (Am. Compl., ECF No. 30.) This matter is before the Court on three motions to dismiss filed by ten Defendants in this case: (1) the Second Motion to Dismiss filed by Defendants Conflict International. Inc. ("Conflict"), Conflict's CEO Michael LaCorte, Michael Tapling, Joseph Hill, Andrew McLaren, Bearden Investigative Agency, Inc. ("BIA"), and BIA's CEO, Michael Thompson (together, "Conflict Defendants") (Conflict Mot., ECF No. 36); (2) the Motion to Dismiss filed by Defendants James Wesley Bearden and JW Bearden & Associates PLLC ("Bearden Firm") (together, "Bearden Defendants") (Bearden Mot., ECF No. 37); and (3) the Motion to Dismiss filed by Defendant Victoria Pressly (Pressly Mot., ECF No. 58). Defendants World Association of Detectives, Inc. and Robert A. Heales filed an answer to the Amended Complaint and have not moved to dismiss. (ECF No. 32.)

For the reasons stated in this Opinion and Order, the Court **GRANTS** Conflict Defendants' Motion to Dismiss (ECF No. 36), **GRANTS** Bearden Defendants' Motion to Dismiss (ECF No.

37), and **GRANTS** Ms. Pressly's Motion to Dismiss (ECF No. 58). The Court **DENIES as moot** Defendants' previous Motions to Dismiss relating to the original complaint (ECF Nos. 24, 25, 26) and Plaintiffs' Motion to Disqualify Counsel (ECF No. 31). All of Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

## BACKGROUND

### I.  Factual Background

Plaintiff Mr. Komorek, an Ohio resident, is a licensed private investigator who practices in Ohio, North Carolina, and New York. (Am. Compl. ¶ 2.) He is the founder and CEO of Plaintiff API International Consulting Group, Inc., ("API"), an Ohio private investigations firm. (*Id.* ¶¶ 21, 23.) Plaintiffs invoke this Court's federal question jurisdiction under 28 U.S.C. § 1331 and this Court's diversity jurisdiction under 28 U.S.C. § 1332, claiming complete diversity between the Parties and an amount in controversy over $75,000. (*Id.* ¶ 19.)

Plaintiffs bring fourteen causes of action against Mr. Komorek's former employer, Conflict, and Conflict's "agents, associates, [and] co-conspirators." (*Id.* ¶ 26.) Conflict is a New York-based private investigation firm led by CEO Michael LaCorte, a resident of the United Kingdom who owns property in New York. (*Id.* ¶¶ 5–6.) Conflict is a subsidiary of a United Kingdom entity, Conflict International, Ltd. (*Id.* ¶¶ 33–34.) Mr. Komorek started working for Conflict as a full-time employee in 2019 after a "trial loan period" from his previous employer that started in 2018. (*Id.* ¶¶ 28–29.)

While employed by Conflict, Mr. Komorek terminated a Conflict subcontractor, Matthew Parker, on Mach 9, 2020, based on Mr. Parker's alleged criminal behavior toward a female employee of Conflict. (*Id.* ¶ 58.) After his termination, Mr. Parker contacted Mr. LaCorte to report that Mr. Komorek "fraudulently exaggerated" his miliary and government service and his

2

relationship with government intelligence agencies and services. (*Id.* ¶¶ 59–61.) Mr. LaCorte opened an internal investigation into Mr. Komorek, and Mr. Komorek cooperated and provided his military records except for his military medical records. (*Id.* ¶¶ 62–63.) Conflict sent Mr. Parker a cease-and-desist letter. (*Id.* ¶¶ 64–68.)

Around the same time, Mr. Komorek raised concerns to Mr. LaCorte that Conflict was conducting operations in the United States that were not authorized by law and was engaged in questionable accounting practices. (*Id.* ¶¶ 34–36.) Furthermore, Mr. Komorek is a disabled combat veteran of the United States Army, and he alleges that Mr. LaCorte engaged in behaviors "triggering" to his Post-Traumatic Stress Disorder ("PTSD") resulting from his time in the military. (*Id.* ¶¶ 38–41.) Mr. Komorek resigned from Conflict on February 25, 2022 after one such triggering incident. (*Id.* ¶ 41.) He then started API as "his own investigation and consulting business." (*Id.* ¶ 42.)

Several weeks after Mr. Komorek resigned from Conflict, two Conflict clients contacted him, unsolicited, to request Mr. Komorek's investigative services due to dissatisfaction with Conflict since his departure. (*Id.* ¶ 45.) Mr. Komorek agreed to perform services for these clients. (*Id.*)

Plaintiffs allege that Defendants, "motivated by a deep-seated desire to retaliate against Komorek" for causing "financial damage" to Conflict, engaged in a conspiracy and a pattern of criminal acts against Mr. Komorek, including mail and wire fraud. (*Id.* ¶¶ 46–54.) Plaintiffs allege that Defendants made accusations about Mr. Komorek that were similar to those Mr. Parker raised to Conflict after Mr. Komorek terminated Mr. Parker's employment. (*Id.* ¶ 69.) Specifically, Plaintiffs claim Defendants fraudulently submitted a military records request in violation of the Privacy Act of 1974, the Freedom of Information Act ("FOIA"), 18 U.S.C. § 100 (false

statements), 18 U.S.C. §1341 (mail fraud), and 28 U.S.C. § 1746 (unsworn declarations under penalty of perjury). (*Id.* ¶ 48.)

Plaintiffs also allege that Defendants filed a false and libelous Ethics Complaint ("WAD Ethics Complaint") to the World Association of Detectives ("WAD"), of which Mr. Komorek was a Member and Board Member. (*Id.* ¶ 49.) In the WAD Ethics Complaint, Conflict called for Mr. Komorek to be removed from WAD based on misrepresentations regarding his suitability for employment, representations to others placing Conflict at risk of liability and harm, unbefitting conduct, breach of fiduciary duties to Conflict, violations of WAD's code of ethics, non-compliance with licensing requirements, and malicious property damage. (*Id.* ¶¶ 257–62.) Plaintiffs refute these allegations at length in the Amended Complaint. (*See id.* ¶¶ 253–463.)

Defendants also contacted an API client, who was formerly a Conflict client, and "libel[ed]/slander[ed]" Mr. Komorek to the client and to a subcontractor Mr. Komorek hired to perform work for the client. (*Id.* ¶¶ 50–51.) As a result of Defendants' actions, Plaintiffs allege that a private investigation company that Mr. Komorek was in negotiations to acquire permanently broke off discussions. (*Id.* ¶ 52.)

The Court will recite other alleged facts as they are relevant to each individual claim assessed below.

## II. Procedural History

### a. Earlier Lawsuits

On November 4, 2022, Mr. Komorek and API filed a lawsuit in the U.S. District Court for the Southern District of New York based on similar facts. *See Komorek v. Conflict Int'l, Inc.*, No. 22-cv-09467, 2024 WL 1484249, at *4 (S.D.N.Y. Mar. 29, 2024). In that suit, the plaintiffs alleged a violation of a New York state labor law, five counts of libel against Conflict and Mr. McLaren,

and tortious interference with prospective business advantage against Conflict and Mr. LaCorte. *Id.* Plaintiffs originally made claims against Mr. LaCorte but later withdrew those claims. *Id.* at *3. The defendants in that suit moved to dismiss all claims. *Id.* at *4. On March 29, 2024, the New York federal court dismissed with prejudice the plaintiffs' tortious interference with prospective business advantage claim, API's libel claim, and part of the plaintiffs' New York labor law claims. *Id.* at *13. The court denied the motions to dismiss as to Mr. Komorek's libel claim, which was assessed under Ohio law.[1] *Id.* at *7–11, 13. Mr. Bearden and his law firm represent Conflict and Mr. McLaren in that case.

Separately, on March 14, 2023, Conflict and its U.K. parent company brought various contract and tort claims against Mr. Komorek and API in the same court. *Conflict Int'l, Inc. v. Komorek*, No. 23-CV-02165, 2024 WL 1347577, at *4 (S.D.N.Y. Mar. 29, 2024). Mr. Komorek and API filed a motion to dismiss. *Id.* The Court dismissed Conflict's claims for abuse of process, tortious interference of contract, and tortious interference with prospective economic advantage. *Id.* at *18–19. The Court allowed Conflict's claims for breach of contract, unfair competition, breach of fiduciary duty (in part) and unjust enrichment to continue. *Id.*

### b. This Lawsuit

Plaintiffs filed this lawsuit on March 15, 2024. (ECF No. 1.) They bring a total of four civil RICO claims, alleged variously against seven of the twelve Defendants: Conflict, Mr. LaCorte, Mr. Bearden, the Bearden Firm, Mr. Thompson, Ms. Pressly, and Mr. McLaren. (Am Compl., ¶¶ 173–225.) Plaintiffs allege four predicate acts to support the RICO claims, each discussed in the Analysis section. (*Id.* ¶¶ 120–72; *see infra*, Analysis Section I.a.)

---

[1] The surviving libel claim against Mr. McLaren in *Komorek*, 2024 WL 1484249, relates in part to statements also raised in this lawsuit. As this Court concludes below, Plaintiff's libel claim here is barred by the statute of limitations.

Plaintiffs also allege ten claims under Ohio law:

- Fraud (Count V) against Conflict and Mr. LaCorte;

- Unfair competition (Count VI) against Conflict, Mr. LaCorte, Mr. Bearden, Mr. Thompson, Mr. Tapling, Mr. Hill, WAD, Mr. Heales, and Does 1–10;

- Trade libel (Count VII) against Conflict, Mr. LaCorte, Mr. Bearden, Mr. Tapling, Mr.Hill, WAD, Mr. Heales, and Does 1–10;

- Libel per se (Count VIII) against the same Defendants;

- Slander (Count IX) against Conflict, Mr. LaCorte, and Mr. Bearden;

- Tortious interference with business relations (Count X) against Conflict, Mr. LaCorte, Mr. Bearden, Ms. Pressly, Mr. McLaren, and Mr. Hill;

- Tortious interference with prospective business relations/economic advantage (Count XI) against Conflict, Mr. LaCorte, Mr. Bearden, and WAD;

- Intentional infliction of emotional distress (Count XII) against all twelve named Defendants and Does 1–10;

- Civil conspiracy (Count XIII) against the same Defendants; and

- Unreasonable intrusion upon seclusion (Count XIV) against Conflict, Mr. LaCorte, Mr. Bearden, the Bearden Firm, BIA, Ms. Pressly, Mr. McLaren, and Mr. Thompson.

(Am. Compl. ¶¶ 226–463.)

As alleged, Mr. Tapling, Mr. Hill, and Mr. McLaren were employees of Conflict and acted on its behalf for the relevant period. (*Id.* ¶¶ 7–9.) Ms. Pressly's relationship to the other Parties is not explained, but Plaintiffs allege that at all relevant times, she acted "for the benefit and/or under the control of Conflict." (*Id.* ¶ 10.) Mr. Bearden and the Bearden Firm represent Conflict, Mr. LaCorte, and Mr. McLaren in the New York federal litigation. *See Komorek*, 2024 WL 1484249.

Plaintiff alleges the Bearden Defendants acted on behalf of Conflict and under its control. (*Id.* ¶¶ 11, 13.) BIA's relationship to the other Parties is not explained, but Plaintiffs allege that the Bearden Firm hired BIA to investigate Mr. Komorek's alleged misrepresentations. (*Id.* ¶ 179.) Mr. Thompson is BIA's CEO. (*See id.* ¶ 121; Conflict Mot., PageID 824.) Mr. Heales is Executive Director of WAD. (Am. Compl., ¶ 21.)

Conflict Defendants moved to dismiss all claims against them for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Conflict Mot.) Bearden Defendants (Bearden Mot.) and Ms. Pressly (Pressly Mot.) also moved to dismiss. WAD and Mr. Heales answered the Amended Complaint and have not moved to dismiss. (ECF No. 32.) Plaintiffs responded to the Conflict Motion (ECF No. 45), the Bearden Motion (ECF No. 44), and the Pressly Motion (ECF No. 59). The moving Defendants filed replies. (Conflict Reply, ECF No. 50; Bearden Reply, ECF No. 51; Pressly Reply, ECF No. 60.)

Plaintiffs filed a Motion to Disqualify Counsel regarding attorney Jack J. Rizzuto for a conflict of interest, acting as a witness, working as a subordinate for certain defendants, and misconduct relating to non-compliance with this Court's Local Rules. (ECF No. 31.) Conflict Defendants filed a response. (ECF No. 42.) Plaintiffs filed a reply. (ECF No. 43.)

## LEGAL STANDARD

To state a claim upon which relief may be granted, plaintiffs must satisfy the pleading requirements set forth in Rule 8(a), which requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has

7

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (clarifying the plausibility standard from *Twombly*, 550 U.S. at 556). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, '[the court is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

Federal Rule of Civil Procedure 9(b) requires that "the circumstances of fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The Sixth Circuit has explained that "[s]o long as a [party] pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *United States v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

As a federal court exercising diversity jurisdiction over state common law claims, the Court, sitting in Ohio, applies Ohio law. *See, e.g., Comm'r of Internal Revenue v. Est. of Bosch*, 387 U.S. 456, 464–65, (1967); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 68 (1938). "In diversity cases, the federal courts must apply state law 'in accordance with the then controlling decision of the highest state court.'" *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001) (quoting *United States v. Anderson Cnty., Tennessee*, 761 F.2d 1169, 1173 (6th Cir. 1985)).

## ANALYSIS

The Amended Complaint in this case, which spans 106 pages and includes 479 paragraphs, does not come close to complying with Rule 8 of the Federal Rules of Civil Procedure. Rule 8(a)(1) and (2) direct the complaint be "a short and plain statement." Fed. R. Civ. P. 8(a)(1), (2). Rule 8(d) requires all pleadings, including a complaint, to be "simple, concise, and direct." Fed. R. Civ. P.

8(d)(1). The directives in Rule 8 are crystal clear and well-known to any law school graduate. For whatever reason, Plaintiffs' counsel have ignored a basic rule of pleading, no doubt costing Plaintiffs a substantial amount of money. Moreover, because of the verbosity of the Amended Complaint, this Court has been forced to spend needless time addressing all the unnecessary allegations in it. Both of Plaintiffs' counsel are **ADMONISHED** for violating Rule 8. Any future, similar conduct will result in sanctions from this Court.

The Court begins its analysis with Plaintiffs' federal RICO claims before turning to the state law claims.

## I.    Federal RICO Claims

Plaintiffs bring civil RICO claims against Conflict, Mr. LaCorte, Mr. Bearden, the Bearden Firm, Mr. Thompson, Ms. Pressly, and Mr. McLaren. (Am Compl., ¶¶ 173–225.)

The RICO criminal statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Federal law provides a civil remedy of treble damages, attorney's fees, and costs to "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. §] 1962." 18 U.S.C. § 1964(c). "[T]o state a civil RICO claim, a plaintiff must allege (1) two or more predicate racketeering offenses, (2) the existence of an enterprise affecting interstate commerce, (3) a connection between the racketeering offenses and the enterprise, and (4) injury by reason of the above." *Grow Michigan, LLC v. LT Lender, LLC*, 50 F.4th 587, 594 (6th Cir. 2022). Each of these elements must be alleged as to each defendant. *See Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 858 (S.D. Ohio 2020) (Cole, J.)

### a. Predicate Racketeering Offenses

Plaintiffs allege four predicate racketeering offenses against various Defendants. (Am. Compl., ¶¶ 120–172.) To qualify as a predicate racketeering offense, the offense must be listed as "racketeering activity" under 18 U.S.C. § 1961(1). "To allege a valid RICO claim . . . a plaintiff must show not only that the predicate act was a 'but for' cause of plaintiff's injuries, but also that it was a proximate cause." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 405 (6th Cir. 2012) (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).

### i. Military Records Request

Conflict retained attorney Mr. Bearden and the Bearden Firm to prepare the WAD Ethics Complaint about Mr. Komorek. (*Id.* ¶ 178.) The firm retained BIA and BIA CEO Mr. Thompson to investigate Mr. Komorek's alleged misrepresentations of his military service and previous employment. (*Id.* ¶ 179.) Mr. Thompson completed a Standard Form 180 ("SF180") document requesting Mr. Komorek's U.S. Army personnel records and medical or service treatment records. (*Id.* ¶ 181–88.) He indicated on the form that he had no relationship to Mr. Komorek and that he was an investigator making the request to validate records for Mr. Komorek's employment. (*Id.*)

The SF180 is available to the public online.[2] *See* Standard Form 180, *available at* https://www.archives.gov/veterans/military-service-records/standard-form-180.html. The instructions indicate that certain types of information may only be released to individuals with certain relationships to the military veteran whose records are requested. *See id.* It does not place

---

[2] Under Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Under this Rule, the Court "may take judicial notice of public records, and it is not required to accept as true factual allegations that are contradicted by those records." *Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021) (citing *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017)).

restrictions on who may file a request in general. *See id.* It also states that "[r]elease of information is subject to restrictions imposed by the military services consistent with Department of Defense regulations, the provisions of the Freedom of Information Act (FOIA) and the Privacy Act of 1974." *Id.*

Plaintiff alleges that the form was "signed by Thompson" and that "Thompson provided an illegible signature." (*Id.* ¶ 180–83.) Plaintiff alleges Mr. Thompson received Mr. Komorek's records "in violation of the Privacy Act of 1974 and Freedom of Information Act (5 U.S.C. § 552 et. Seq); False Statements 18 U.S.C. [§] 1001; for Mail Fraud 18 U.S.C. [§] 1341; for Perjury 18 U.S.C. [§] 1621; for Unsworn Declarations Under Penalty of Perjury 28 U.S.C. [§ 1746." (Am. Compl., ¶ 191–92.)

Of the statutory violations claimed by Plaintiffs, only the accusation of mail fraud, in violation of 18 U.SC. § 1341, is listed as a racketeering offense. *See* 18 U.S.C. 1961(1). Mail fraud consists of "(1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme." *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005). "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *Id.* at 402. "A plaintiff must also demonstrate scienter to establish a scheme to defraud, which is satisfied by showing the defendant acted either with a specific intent to defraud or with recklessness with respect to potentially misleading information." *Heinrich*, 668 F.3d at 404. Mail fraud pled as a predicate RICO act is subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, under which a plaintiff must explain why the statements were fraudulent, among other details. *Id.*

Plaintiff fails to allege facts sufficient to raise an inference that the military records request was false or otherwise fraudulent and that any Defendant made the military records request with

the required fraudulent scienter. First, the Amended Complaint does not adequately explain the alleged fraud. Plaintiffs allege that Mr. Thompson, at the direction and on behalf of other Defendants, submitted an SF180 to the federal government. It appears that Plaintiffs allege that Mr. Thompson made a false representation when he signed Section III of the SF180 form. But the form he submitted, which is attached to the Amended Complaint, shows that the signature only relates to the information contained in Section III.[3] (*See* ECF No. 30-18.) There, Mr. Thompson lists his name, address, and other personal information, and states that he is an "Investigator" with no relation to Mr. Komorek. (*See id.*) Plaintiffs do not allege that any of this information is false, misleading by omission, or fraudulent in any other way.

Regardless, Plaintiffs do not allege that any Defendant made this records request with the requisite scienter for a mail fraud claim. Plaintiffs have not pled sufficient facts or otherwise explained a theory of how Defendants' alleged act of making a public records request in compliance with federal procedures constitutes a fraudulent act.

Ultimately, there are no plausible grounds for Plaintiff's mail fraud claim based on the facts alleged in the Amended Complaint. And the other violations of law listed under this predicate act are not actionable as "racketeering activity" under 18 U.S.C. § 1961(1). Accordingly, the first alleged predicate act is not a predicate act under RICO.

### ii. Retaliating Against a Witness and Wire Fraud

Plaintiffs' second alleged predicate RICO act pertains to Ms. Pressly and Mr. McLaren.

---

[3] The Form SF180 submitted by Mr. Thompson is heavily referenced in the Amended Complaint, is attached to the Amended Complaint, and is integral to Plaintiffs' claims. The Court considers the completed form for the purposes of Defendants' Motions. *See Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) ("In reviewing a motion to dismiss, the Court may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." (quotation and citation omitted)).

(Am. Compl., ¶¶ 136–57.) Plaintiffs' allegations under this section are difficult to follow. It appears Plaintiffs allege that Ms. Pressly made negative statements about Mr. Komorek's business practices to Trudy Jacobson, a former client of Conflict who is now a client of API. (*See id.*) Ms. Pressly also sent Ms. Jacobson a letter written by Mr. McLaren in which Mr. McLaren claims that Mr. Komorek failed to pay him a 10% commission relating to work done for Ms. Jacobson. (*Id.* ¶ 144–45.) Plaintiffs allege that Ms. Pressly was convicted of harassment of Ms. Jacobson in state court in Leawood, Kansas. (*Id.* ¶ 154–55.) They also allege "on information and belief," that Ms. Pressly is engaged in a "smear campaign" impersonating Ms. Jacobson online. (*Id.* ¶¶ 156, 203.)

On these facts, Plaintiffs allege the predicate acts of wire fraud, in violation of 18 U.S.C. § 1343, and retaliating against a victim, witness, or informant, in violation of 18 U.S.C. § 1513(e). (*Id.* PageID 162.) Both offenses are listed as racketeering activity under 18 U.S.C. § 1961(1).

The elements of wire fraud mirror those of mail fraud, with the added requirement that one must use wires in furtherance of the scheme to defraud. *Heinrich*, 668 F.3d at 404. As with mail fraud, allegations of wire fraud are subject to the heightened pleading requirements of Rule 9(b). Here, Plaintiffs plainly fail to plead facts about the fraudulent scheme to which Ms. Pressly's and Mr. McLaren's acts allegedly contributed. They also fail to allege how Ms. Pressly and Mr. McLaren acted with scienter regarding the statements made to Ms. Jacobson. Plaintiffs do not adequately plead wire fraud for the purposes of a predicate RICO offense.

Similarly, Plaintiffs fail to plead a violation of 18 U.S.C. § 1513(e), which prohibits intentionally taking actions harmful to any person for providing truthful information to a law enforcement officer relating to a federal offense. 18 U.S.C. § 1513(e). Plaintiffs allege that Ms. Pressly is under investigation for criminal offenses in Ostego County, New York for harassment of Ms. Jacobson. (Am. Compl., ¶ 155.) But they do not allege that the investigation relates to a

13

federal offense—they only allege she was engaged in harassment and was being investigated in state court. Plaintiffs also fail to allege facts that support any connection between Ms. Pressly's alleged intimidation with the alleged affairs of a criminal RICO enterprise.

On the facts pled under the second predicate act, Plaintiffs do not sufficiently allege a predicate RICO offense.

### iii. Wire Fraud

Third, Plaintiffs allege that Mr. McLaren committed a wire fraud offense by asking Ms. Pressly to email Ms. Jacobson the letter about Mr. Komorek as described above and by sharing negative information about Mr. Komorek's military career and record via LinkedIn. (Am. Compl., ¶¶ 158–65.) Again, Plaintiffs do not advance a plausible theory of the fraudulent scheme at play here. And under the heightened pleading standards for wire fraud claims, Plaintiffs fail to allege facts raising a plausible inference that Mr. McLaren acted with recklessness or intent to deceive regarding the information he shared about Mr. Komorek.

On the facts pled under the third predicate act, Plaintiffs do not sufficiently allege a predicate RICO offense.

### iv. Fraud and Misuse of Visas, Permits, and Other Documents

Last, Plaintiffs allege Mr. LaCorte sent a completed visa questionnaire to an attorney to obtain legal assistance in applying for a U.S. visa. (Am. Compl., ¶ 166.) Plaintiffs stated that LaCorte falsely indicated on the questionnaire that he had never been arrested. (*Id.* ¶¶ 167–69.) Plaintiffs state that on information and belief, Mr. LaCorte was arrested in Cuba in October 2000 on offenses including entry without a visa, illegal use of equipment, and espionage, among others. (*Id.* ¶ 169.) It appears Plaintiffs allege that Mr. LaCorte also, at some point, filed a Petition for Nonimmigrant Worker Visa Application, USCIS Form I-219. (*See id.* ¶¶ 166–68.) Plaintiffs claim

that Mr. "Komorek suffered the emotional distress of going to the appropriate government agencies and reporting the above information." (*Id.* ¶ 170.)

On these facts, Plaintiffs allege fraud and misuse of visas, permits, and other documents, in violation of 18 U.S.C. § 1546, an offense listed as racketeering activity under 18 U.S.C. § 1961(1). The statute prohibits misrepresentations of material facts on immigration forms submitted to the U.S. Government. *See Carmen v. Health Carousel, LLC*, No. 1:20-CV-313, 2023 WL 5104066, at *10 (S.D. Ohio Aug. 9, 2023) (Cole, J.). As a fraud offense, this claim is subject to the heightened pleading standards of Rule 9(b). *See id.*

Conflict Defendants argue that the questionnaire was sent to Conflict's outside legal counsel for legal advice pertaining to a future U.S. visa application for Mr. LaCorte. (Conflict Mot., PageID 843.) Plaintiffs do not dispute this characterization. (*See* ECF No. 45, PageID 1026–27.) Conflict Defendants attached a redacted version of the completed form to their Motion. (ECF No. 36-4.)[4] The form is titled "L-1A Visa Employee Questionnaire" and is branded with a law firm letterhead at the top. (*See id.*, PageID 888.) The form states it is for the purpose of assisting the applicant in preparing a visa application and that "this [is] NOT a government form." (*Id.*) Conflict also attached to their Motion a blank USCIS Form I-129. (ECF No. 36-5.)

Plaintiffs only allege that Mr. LaCorte falsely answered the arrest history question on the questionnaire sent to Conflict's outside law firm. They do not allege that he provided false or misleading information on the visa application itself. Nor do they allege that the visa application even requires the applicant to report criminal or arrest history. Plaintiffs also fail to allege that Mr. LaCorte acted with fraudulent scienter. Additionally, Plaintiffs do not allege facts sufficient to

---

[4] The Court takes judicial notice of this questionnaire because Plaintiffs reference it in the Amended Complaint, it is integral to Plaintiffs' RICO claims against Mr. LaCorte and other Defendants, and it is attached to Conflict Defendants' Motion. *See Kreipke*, 807 F.3d at 774.

raise an inference that the alleged misrepresentation on the visa questionnaire was a "but for" or proximate cause of Plaintiffs' injuries or that it was connected to the alleged RICO enterprise.

On the facts pled under the fourth predicate act, Plaintiffs fail to sufficiently allege a predicate RICO violation.

### v.  Pattern of Racketeering Activity

The Court concludes that none of the predicate acts pled in the Amended Complaint adequately alleges racketeering activity under 18 U.S.C. § 1961(1). Even if any one of the predicate acts listed above were adequately pled, Plaintiffs need to plead at least two predicate acts as to each Defendant, and they do not clear that bar. Additionally, Plaintiff only pleads one predicate act against Defendants BIA, Mr. Thompson, Mr. Hill and Mr. Tapling, so the civil RICO claim fails against them.

### b.  Existence of an Enterprise

Plaintiffs allege that Conflict "comprises an enterprise at defined in 18 U.S.C. § 1961(4)." (Am Compl. ¶¶ 75, 105.) Under that statute, the term "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

Because the alleged "enterprise" here is a corporation, a "distinctness" requirement applies: "to successfully plead a RICO claim, there must be both (1) the 'person' against whom the claim is asserted," and, separately, "(2) the 'enterprise' that forms one of the elements of the RICO claim." *Compound Prop. Mgmt.*, 462 F. Supp. 3d at 856 (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). Interpreting this "distinctness" requirement from *Cedric Kushner*, the Sixth Circuit has held that,

> 1) individual defendants are always distinct from corporate enterprises because they
> are legally distinct entities, even when those individuals own the corporations or

act only on their behalf; and 2) corporate defendants are distinct from RICO enterprises when they are functionally separate, as when they perform different roles within the enterprise or use their separate legal incorporation to facilitate racketeering activity.

*In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 492 (6th Cir. 2013).

Under these principles, Plaintiffs' civil RICO claim against Conflict is insufficiently pled because Conflict is also the alleged "enterprise." *See Shields v. UnumProvident Corp.*, 415 F. App'x 686, 691 (6th Cir. 2011) "([A] corporation cannot become an enterprise distinct from itself for RICO purposes.") But Plaintiffs' civil RICO claims against the five individual RICO defendants based on Conflict as the enterprise, are not necessarily improper on the "enterprise" element.

Additionally, the Court need not assess whether the Bearden Firm, considered a "corporate defendant" for the purposes of the "enterprise" element, is sufficiently distinct from Conflict as alleged because Plaintiffs do not state a coherent predicate RICO act against it. Plaintiffs merely allege that Mr. LaCorte retained the law firm to investigate Mr. Komorek. (*See* Am. Compl. ¶¶ 178–79.) Plaintiffs do not explain why that act would constitute a predicate RICO violation.

In the alternative, Plaintiffs state that Defendants acted "as a group of individuals associated in fact" for the purpose of causing harm to Mr. Komorek and his business. (Am. Compl., ¶ 76.) "[A]n association-in-fact enterprise is a group of persons associated together for the common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (quotation and citation omitted). An association-in-fact RICO enterprise "must have at least three . . . features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. Also, the association-in-fact "must be separate from the pattern of racketeering activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

The only common purpose that Plaintiffs allege binds together the members of the alleged association-in-fact enterprise is the desire to cause harm and damage to Mr. Komorek. (*See* Am. Compl., ¶ 76.) That alleged common purpose is not separate from the pattern of racketeering activity alleged: the four predicate acts listed above that all regard bringing harm and damage to Mr. Komorek. *See Wright v. Richardson*, 740 F. Supp. 3d 601, 619 (E.D. Mich. 2024) (dismissing the plaintiff's RICO claim because the plaintiff "fail[ed] to adequately demonstrate how each defendant participated in the management or operation of the enterprise," among other reasons). Accordingly, Plaintiffs have failed to plead an association-in-fact enterprise.

### c. RICO Claims Conclusion

The Court concludes that none of the four alleged predicate RICO acts is sufficiently pled as to any of the seven RICO defendants. Even if any one of the predicate acts was sufficiently pled, a civil RICO claim requires at least two predicate acts as to each defendant, and Plaintiffs' RICO claims fail on that independent ground. Additionally, Plaintiffs fail to sufficiently plead an "enterprise" as to Conflict. For these reasons, the Court **DISMISSES WITH PREJUDICE** Plaintiff's four civil RICO claims (Counts I through IV) against all seven RICO defendants.

## II.    Common Law Fraud

Plaintiffs allege common law fraud against Conflict and Mr. LaCorte on two grounds. (Am. Compl., ¶ 227.) First, they claim Conflict and Mr. LaCorte "fraudulently represented that [Conflict] was a company solely owned and incorporated in the State of New York and that Komorek would be given a 20% ownership interest in the company." (*Id.* ¶ 228.) Mr. Komorek relied on this representation when agreeing to work for Conflict. (*Id.* ¶ 229.) He later discovered that Conflict was wholly owned by Conflict International, Ltd., the U.K. parent company. (*Id.* ¶ 230.)

Second, Plaintiffs allege fraud based on Mr. LaCorte enlisting Mr. Komorek's assistance with the visa application described above. (*See supra*, Analysis Section I.a.iv.) Mr. Komorek states that he suffered emotional distress of reporting Mr. LaCorte's undisclosed arrest history to government agencies. (*Id.* ¶ 236.)

Under Ohio law, common law fraud consists of six elements:

[1] a representation or, where there is a duty to disclose, concealment of a fact, [2] which is material to the transaction at hand, [3] made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, [4] with the intent of misleading another into relying upon it, [5] justifiable reliance upon the representation or concealment, and [6] a resulting injury proximately caused by the reliance.

*Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998) (citations omitted) (cleaned up). Plaintiffs state that their first fraud allegation is based on a fraud-in-the-inducement theory. (ECF No. 45, PageID 1031.) "Fraud in the inducement arises when a party is induced to enter an agreement based on a misrepresentation." *Matter of Est. of McDaniel*, 212 N.E.3d 351, 368 (7th Dist. Ohio Ct. App. 2023). "The fraud or misrepresentation must be made with the intent of inducing the party's reliance." *Id.* All six fraud elements must be proven under a fraud-in-the-inducement theory. *Id.* Generally, a fraud claim cannot be "predicated on a representation concerning a future event." *Yo-Can, Inc. v. The Yogurt Exch., Inc.*, 778 N.E.2d 80, 89 (7th Dist. Ohio Ct. App. 2002). "However, a promise made with a present intention not to perform is a misrepresentation of an existing fact even if the promised performance is to occur in the future." *Id.*

Additionally, Plaintiffs' fraud claims are subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. *See Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (applying Rule 9(b) to state common law fraud claims). Rule 9(b) requires a plaintiff claiming fraud: "(1) to specify the allegedly fraudulent statements;

(2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Id.* Additionally, "[a]lthough 'conditions of a person's mind may be alleged generally,' Fed. R. Civ. P. 9(b), the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted)).

### a. Fraud Relating to Ownership Interest

Plaintiff's fraud-in-the-inducement theory is insufficiently pled on several grounds. First, Plaintiff does not state when, where, or under what circumstances Mr. LaCorte made the promise of a 20% ownership interest to Mr. Komorek. (*See* Am. Compl., ¶¶ 226–40.)

Second, Plaintiffs do not adequately explain the circumstances of the fraud as alleged. In a January 18, 2022 email from Mr. LaCorte to Mr. Komorek that is attached to the Amended Complaint, Mr. LaCorte stated, "When you joined Conflict back in Sept 2018, . . . we were willing to offer you 20% equity in the company for no fee. Your remit was to build the business on the back of our existing industry brand and recognition and be rewarded via profits (25% quarterly and 20% annually). You agreed." (ECF No. 30-7.) The email then corroborates Plaintiffs' statement that Mr. Komorek voluntarily changed his compensation to a salary in 2019. (*See id.*) Plaintiffs do not allege any facts regarding whether the 20% ownership interest was part of his new employment agreement or whether Mr. LaCorte made any representations about the 20% interest as part of that change in Mr. Komorek's employment arrangement. (*See id.* ¶¶ 226–40.) Plaintiffs do not dispute the description of Mr. Komorek's employment arrangement as described in Mr. LaCorte's email except to say that the 20% ownership offer was "rescinded" by Mr. LaCorte via the email. (*See id.* ¶ 231.)

Third, based on these same factual ambiguities, Mr. Komorek fails to adequately plead

justifiable reliance. Plaintiffs allege that Mr. Komorek "opted to go to a salaried, at-will position with bonuses," but they do not allege any facts regarding why and how Mr. Komorek justifiably relied on the 20% ownership interest in "opting" for the salaried position.[5] (*Id.* ¶ 231.)

Plaintiffs' fraud-in-the-inducement theory fails on these grounds.

### b. Fraud Relating to Visa Application

Plaintiffs' theory of fraud relating to the visa application is unclear. Plaintiffs seem to allege that Mr. Komorek would not have entered an employment relationship with Conflict and would not have assisted with Mr. LaCorte's visa application had he known that Mr. LaCorte and his associates were arrested in Cuba in 2000. (Am. Compl., ¶¶ 234–36.)

Several problems arise under this theory of fraud. First, Plaintiffs do not allege that Mr. LaCoste had a duty to disclose this alleged arrest at the time Mr. Komorek agreed to work for Conflict. Second, Plaintiffs fail to allege how this was a material fact to Mr. Komorek's employment decision or how he justifiably relied on the concealment of the arrest. Last, Mr. Komorek does not articulate any theory of how he was injured by this alleged concealment.

Similar problems arise regarding the visa application part of Plaintiffs' vague theory of fraud. Plaintiffs do not allege that Mr. LaCoste had a duty to disclose the alleged arrest to Mr. Komorek at the time Mr. LaCoste submitted to the information form to the outside law firm that was assisting with Mr. LaCoste's visa application, or how Mr. Komorek justifiably relied on the alleged misrepresentation as part of Mr. Komorek's "decision to participate in assisting Mr.

---

[5] Conflict Defendants also argue that the fraud claim is barred by Ohio's four-year statute of limitations. (Conflict Mot., PageID 857); Ohio Rev. Code § 2305.09(C). Although Plaintiffs' explanation of the relevant timeline is unclear and ambiguous, the Amended Complaint does not conclusively establish that the statute of limitations bars Plaintiffs' claim. For the purposes of Defendants' Motions, the Court assumes, without deciding, that the statute of limitations does not conclusively bar his claim.

LaCorte in obtaining a US Visa." (Am. Compl., ¶ 235.) Furthermore, Plaintiffs do not allege a coherent theory of how Mr. LaCorte made the misrepresentation with the intent to induce Mr. Komorek's reliance on it.

In sum, Plaintiffs' theories of common law fraud are insufficiently pled under the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure on additional grounds as described above. The Court **DISMISSES WITH PREJUDICE** Plaintiffs' common law fraud claim against Conflict and Mr. LaCorte.

### III.    Unfair Competition

Next, Plaintiffs bring a claim for common law unfair competition against Defendants Conflict, Mr. LaCorte, Mr. Bearden, Mr. Tapling, Mr. Hill, WAD, Mr. Heales, and Does 1–10. (Am. Compl., ¶ 242.) The claim spans 115 paragraphs across 30 pages of the Amended Complaint and includes entire pages of Nevada state law, bylaws of Defendant WAD, and email correspondence that renders this section of the Amended Complaint difficult to discern. (*See* Am. Compl., PageID 634–664; ¶¶ 241–355.) The Court endeavors to discern if Plaintiffs state a plausible claim.

Plaintiffs allege that in June 2022, Conflict, Mr. LaCorte, and others not named as Defendants requested that the WAD undertake an ethics investigation of Mr. Komorek and that WAD expel Mr. Komorek from the organization and from WAD's Board of Directors. (*See id.* ¶¶ 253–55.) Conflict and Mr. Komorek allegedly made fraudulent accusations "to induce WAD to take adverse actions against Komorek that they knew would adversely affect Komorek's and API's ability to fairly compete" in the private investigations and consulting industry. (*Id.* ¶ 255.) Based on email correspondence included in the body of the Amended Complaint, WAD voted to remove Mr. Komorek from the Board of Directors, but he was not removed as a member of the

organization generally. (*See id.*, PageID 663.) Mr. Komorek alleges the WAD Ethics Complaint and the removal "result[ed] in financial loss and emotional distress to Komorek and API." (*Id.* ¶ 352.)

### a. Applicable Law

Plaintiffs raise their unfair competition claim under Ohio common law. (*See id.*, ¶¶ 241–355.) Conflict Defendants argue that Plaintiffs instead bring a defamation-based deceptive trade practice claim under the Ohio Deceptive Trade Practices Act ("ODTPA"), Ohio Revised Code § 4165.02, to which this Court has applied a one-year statute of limitations. (Conflict Mot., PageID 860); *see Lasmer Indus., Inc. v. AM Gen., LLC*, 741 F. Supp. 2d 829, 839 (S.D. Ohio 2010) (Graham, J.) (holding one-year statute of limitations applied to defamation-based ODTPA claims).

But Plaintiffs explicitly confine their claim to Ohio common law, under which the cause of action for unfair competition survived the implementation of the ODTPA. (*See* Am. Compl., ¶¶ 241–355; ECF No. 45, PageID 1034–36); Ohio Rev. Code § 4165.02(C) ("This section does not affect unfair trade practices that are otherwise actionable at common law or under other sections of the Revised Code."). Under Ohio law, a four-year statute of limitations applies for tort actions not specifically covered by other sections of the Ohio Revised Code, including a common law claim for unfair competition. *See StarForce Nat'l Corp. v. Transcor, Inc.*, No. 1:10-CV-84, 2010 WL 11639831, at *7 (S.D. Ohio Dec. 15, 2010) (Barrett, J.) (citing Ohio Rev. Code § 2305.09(D)). Plaintiffs' cause of action, as alleged, accrued when certain Defendants made the WAD Ethics Complaint in June 2022, so the claim is not barred by the four-year statute of limitations.

"Although the common-law tort of unfair competition in Ohio normally consists of misrepresenting the source of goods offered to the public, '[t]he concept of unfair competition may also extend to unfair commercial practices such as malicious litigation, circulation of false rumors,

or publication of statements, all designed to harm the business of another.'" *StarForce Nat'l Corp.*, 2010 WL 11639831, at *7 (quoting *Water Mgmt., Inc. v. Stayanchi*, 472 N.E.2d 715, 717 (Ohio 1984)). Generally, for unfair competition claims raised under Ohio law, "Ohio courts are to apply essentially the same analysis as that applied in assessing the law of unfair competition under the federal statutes," including the Lanham Act. *Dawson v. Blockbuster, Inc.*, No. 86451, 2006 WL 1061769, *3 (8th Dist. Ohio Ct. App. Mar. 16, 2006) (citing *Cesare v. Work*, 520 N.E.2d 586, paragraph one of the syllabus (Ohio 1987)) (cleaned up); *see Future Lawn, Inc. v. Maumee Bay Landscape Contractors, L.L.C.*, 542 F. Supp. 2d 769, 780 (N.D. Ohio 2008) (Carr, J.).

Plaintiffs' unfair competition claim does not fit into the Lanham's Act's "two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). But the Ohio Supreme Court has suggested that a deceptive trade practice claim regarding the "circulation of false rumors" and other public statements may exist under common law. *See Water Mgmt., Inc.*, 472 N.E.2d at 717. On the generous pleading standards applicable at the motion to dismiss stage, the Court assumes, without deciding, that such a claim exists under Ohio common law. But even assuming such a cause of action exists, Plaintiffs face another hurdle: issue preclusion.

### b. Issue Preclusion on Qualified Privilege

Defendants argue that, by collateral estoppel, Plaintiffs cannot bring an unfair competition claim based on the WAD Ethics Complaint because the New York federal court concluded that it was protected as under Ohio's qualified privilege defense.

### i. Issue Preclusion Law

Generally, the doctrine of collateral estoppel, or issue preclusion, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to

24

a prior judgment. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). "[F]ederal rules allow issue preclusion at the motion to dismiss stage." *Ingram v. Regano*, No. 23-3222, 2023 WL 6634262, at *2 (6th Cir. Oct. 12, 2023) (citing *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 275 (6th Cir. 2016)).

It remains unresolved in the Sixth Circuit whether federal or state issue preclusion law governs where, as here, "a federal court exercises federal jurisdiction over the federal claims and supplemental jurisdiction over the state law claims." *In re Berge*, 953 F.3d 907, 916 (6th Cir. 2020). Regardless, the Sixth Circuit has applied federal issue preclusion rules in a case addressing both federal claims and Ohio state law claims, so this Court applies the same. *Georgia-Pac. Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012).

> Four requirements must be met before issue preclusion applies:
>
> (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Id.* (quotation and citation omitted).

Additionally, different rules apply depending on whether the defendant or the plaintiff in the current case is wielding issue preclusion against the opposing party. *See id.* at 1098–99. Here, Defendants are using issue preclusion against Plaintiffs, so defensive issue preclusion rules apply. In defensive issue preclusion, "[m]utuality between the parties is not required," so it makes no difference that there are additional Defendants in this case. *Id.* at 1099 (citing *McAdoo v. Dallas Corp.*, 932 F.2d 522, 523 (6th Cir. 1991)).

### ii. Ohio Qualified Privilege Law

Under Ohio defamation law, defendants may assert a defense of qualified privilege

regarding certain protected communications. *See Jacobs v. Frank*, 573 N.E.2d 609, 612 (Ohio 1991). "[W]here claims such as tortious interference and disparagement are based on statements that are qualifiedly privileged under defamation law, the protection afforded those statements under *Jacobs* . . . must also apply in the derivative claims." *A&B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1295 (Ohio 1995).

> Under Ohio law,
>
> [a] qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty of a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.

*Sygula v. Regency Hosp. of Cleveland E.*, 64 N.E.3d 458, 466 (8th Dist. Ohio Ct. App. 2016) (citation omitted). For the privilege to apply, a defamation defendant must show "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Id.* "The privilege may extend to fraternal or professional organizations." *Komorek*, 2024 WL 1484249, at * 12 (citing *Putka v. First Cath. Slovak Union*, 600 N.E.2d 797, 805 (8th Dist. Ohio Ct. App. 1991); *Creps v. Waltz*, 450 N.E.2d 716, 718 (6th Dist. Ohio Ct. App. 1982)).

"Once a defendant demonstrates the existence of the qualified privilege, a plaintiff can prevail only upon a showing of actual malice." *Kanjuka v. MetroHealth Med. Ctr.*, 783 N.E.2d 920, 932 (8th Dist. Ohio Ct. App. 2002).

### iii.  Issue Preclusion Analysis

In *Komorek*, 2024 WL 1484249, Mr. Komorek and API brought a tortious interference claim against Conflict in the New York federal court based on the same WAD Ethics Complaint that forms the basis of several of their claims this case. *See id.* at *12–13. Conflict raised the

qualified privilege issue in a motion to dismiss as a defense to Mr. Komorek and API's tortious interference claim. *Id.* The parties litigated both qualified privilege and the sufficiency of the complaint as to actual malice. *Id.* at *12–13. The New York federal court determined that,

> The WAD is a private organization that polices its members through a series of reporting mechanisms and quasi-judicial proceedings. As a member of the WAD, LaCorte had an interest in upholding the WAD's procedures and code of conduct. *See Putka*, 600 N.E.2d at 804–05. Accordingly, when LaCorte and three other WAD members believed Komorek had behaved in a manner that warranted reporting him to the WAD, they filed a complaint. The WAD Complaint was appropriately filed with the WAD, and there is no indication that it was published to non-members. Thus, the qualified privilege attaches to the WAD Complaint.

*Komorek*, 2024 WL 1484249, at * 12 (citations omitted).

The New York federal court considered arguments from both sides and held that as a matter of Ohio law, the WAD Ethics Complaint was a privileged communication. *Id.* That court also held that the complaint did not sufficiently allege that the statements in the WAD Ethics Complaint were made with actual malice, as is required to overcome the qualified privilege at the pleadings stage. *Id.* at * 13. On those grounds, the New York federal court dismissed with prejudice Mr. Komorek and API's tortious interference claim. *Id.* at *12–13.

Here, Plaintiffs raise an unfair competition claim against Defendants Conflict, Mr. LaCorte, Mr. Bearden, Mr. Tapling, Mr. Hill, WAD, Mr. Heales, and Does 1–10. (Am. Compl., ¶ 242.) The claim is based entirely around the WAD Ethics Complaint and WAD's adjudication process that flowed from it. The precise issue of whether the WAD Ethics Complaint was protected by the defense of qualified privilege under Ohio law was raised and litigated in the New York federal case. The New York federal court's determination that the WAD Ethics Complaint was privileged and that the complaint failed to sufficiently allege actual malice was necessary to the outcome—it was the reason the New York court dismissed the tortious interference claim with prejudice. *See Komorek*, 2024 WL 1484249, at *13. That outcome was a final adjudication on the

merits as to that claim. And the parties against whom estoppel is sought—Mr. Komorek and API—had a full and fair opportunity to litigate the matter in that court.

Accordingly, the issue of whether the WAD Ethics Complaint is protected as a matter of qualified privilege under Ohio law is precluded. It cannot form the basis of Plaintiffs' unfair competition claim here. Therefore, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' unfair competition claim under Ohio common law against all Defendants. This holding includes Does 1–10, WAD and Mr. Heales, even though they do not move to dismiss, because the WAD Ethics Complaint cannot be the basis for this claim as a matter of law.

## IV. Trade Libel, Libel *Per Se*, and Slander

### a. Libel

Plaintiffs bring libel claims against Conflict, Mr. LaCorte, Mr. Bearden, Mr. Tapling, Mr. Hill, WAD, Mr. Heales, and Does 1–10. (Am. Compl., ¶¶ 357, 362.) They allege common law trade libel on the basis that "Defendants knowingly published false matters that are derogatory to the Plaintiff Komorek and API's business, and which were calculated to prevent or interfere with relationships between the Plaintiffs and others, to the Plaintiff's detriment." (Am. Compl., ¶¶ 356–60.) Plaintiffs also raise a libel *per se* claim. (*Id.* ¶¶ 361–67.) For both claims, Plaintiffs refer generally to the vast factual allegations recited under their unfair competition claim rather than identifying any specific libelous statements. (*See id.* ¶¶ 358, 363.)

"Ohio has not recognized a separate tort of trade libel, but has instead dealt with all commercial falsehoods within R.C. 4165 the statutes governing Deceptive Trade Practices, and has folded the claim into commercial disparagement." *Accelerated Moving & Storage v. Herc Rentals, Inc.*, No. 21AP-523, 2022 WL 3907764, at *4 (10th Dist. Ohio Ct. App. Aug. 30, 2022) (citing Ohio Rev. Code § 4165.02(A)(10)), *appeal not allowed*, 204 N.E.3d 568. As discussed

above, Plaintiffs explicitly declined to raise a claim under the commercial disparagement statute, and such a claim would be time barred anyway. On the general pleading standards applicable on a motion to dismiss, the Court construes Plaintiffs' claims as for general common law libel.

Under Ohio law, "[a]n action for libel [or] slander . . . shall be commenced within one year after the cause of action accrued." Ohio Rev. Code § 2305.11(A). A discovery rule exception applies to the statute of limitations for libel claims, but Plaintiffs make no argument that the exception applies to any of the allegedly libelous statements. *Weidman v. Hildebrant*, __ N.E.3d __, 2024 WL 3707590, at *4 (Ohio 2024) ("[T]he discovery rule applies to claims of libel based on reputational injuries when the publication of the libelous statements was secretive, concealed, or otherwise inherently unknowable to the plaintiff due to the nature of the publication.")

This lawsuit was filed on March 15, 2024 (see ECF No. 1), so any claims based on allegedly defamatory statements made before March 15, 2023 are time-barred. In their briefs, responding to Conflict Defendants' statute-of-limitations argument regarding libel, Plaintiffs reference only one statement that occurred within one year of March 15, 2024. (ECF No. 45, PageID 1037.) Plaintiffs allege,

> On or about March 20, 2023, a video conference WAD Appeals Hearing was conducted by WAD members, attended by Plaintiff Komorek, and Defendants LaCorte and Bearden. In said hearing, the false and libelous statements in Count IV were verbally repeated by Bearden to the Board Members of WAD and verbally affirmed by LaCorte.

(Am. Compl., ¶ 370.)

These alleged facts only refer to verbal statements, not written ones. "The term slander refers to spoken defamatory words and libel refers to written defamatory words." *Holtrey v. Wiedeman*, 221 N.E.3d 284, 295 (12th Dist. Ohio Ct. App. 2023) (quotation and citation omitted). Accordingly, the Court will consider the above statements only as potential slander, not libel.

29

Plaintiffs allege no statements within the one-year statute of limitations period that are actionable as libel. Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' claims for libel and libel *per se* as to all relevant Defendants.

### b. Slander

Plaintiffs allege slander against Defendants Conflict, Mr. LaCorte, and Mr. Bearden. (Am. Compl., ¶ 369.) As stated above, Plaintiffs allege Mr. Bearden verbally restated the allegations in the WAD Ethics Complaint at the WAD appeal hearing and that Mr. Komorek verbally affirmed these statements. (*Id.* ¶ 370.) Additionally, Plaintiffs allege that Mr. Bearden made additional slanderous statements at the WAD appeal hearing, which Mr. Komorek attended. (*Id.* ¶ 370–71.) Mr. Bearden stated that Mr. Komorek is "trying to destroy [Conflict]," that he has "shown no contrition" and has "gone on to assault" Mr. Bearden, Mr. LaCorte, WAD, and its Board. (*Id.*) Mr. Bearden also accused Mr. Komorek of writing or causing the publication of articles that harm Conflict's clients and stated that Mr. Komorek was "responsible for 5 lawsuits involving Conflict." (*Id.*). Plaintiffs allege these statements were false and were made with actual malice. (*Id.* ¶ 372.)

"The essential elements of a defamation action, whether slander or libel, are that the defendant made a false statement, that the false statement was defamatory, that the false defamatory statement was published, that the plaintiff was injured and that the defendant acted with the required degree of fault." *Holtrey*, 221 N.E.3d at 295 (quotation and citation omitted). A statement is defamatory if it is "made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." *A&B-Abell Elevator Co.*, 651 N.E.2d at 1289.

### i. Statute of Limitations – Single Publication Rule

To the extent Plaintiffs' slander claim is based on the restatement of the allegations made in the WAD Ethics Complaint, their slander claim is time-barred. "Ohio courts have consistently rejected efforts to restart the statute of limitations in a defamation action where allegedly defamatory information, which has already been published or spoken, is republished or retransmitted to new consumers." *Friedler v. Equitable Life Assur. Soc. of U.S.*, 86 F. App'x 50, 55 (6th Cir. 2003); *see T.S. v. Plain Dealer*, 954 N.E.2d 213, 216 (8th Dist. Ohio Ct. App. 2011) (declining "to depart from settled law in Ohio that provides that the initial date of publication triggers the statute of limitations for causes of action based on allegedly defamatory materials.").

### ii. Absolute Privilege

Defendants argue that the Mr. LaCorte's and Mr. Bearden's statements to WAD members at the WAD appeal hearing are protected under Ohio's absolute "litigation privilege" for statements made in judicial proceedings and certain quasi-judicial proceedings. (Conflict Mot., PageID 865; Bearden Mot., PageID 942.) "The litigation privilege provides absolute immunity to parties, witnesses, lawyers, and judges from future lawsuits for statements made during and relevant to judicial proceedings." *Reister v. Gardner*, 174 N.E.3d 713, 715 (Ohio 2020). "[U]nder the doctrine of absolute privilege in a judicial proceeding, a claim alleging that a defamatory statement was made in a written pleading does not state a cause of action where the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which it appears." *Surace v. Wuliger*, 495 N.E.2d 939, 942–43 (Ohio 1986). The Ohio Supreme Court extended this immunity to the "quasi-judicial" setting of attorney disciplinary proceedings. *Hecht v. Levin*, 613 N.E.2d 585, 590 (Ohio 1993).

Defendants attempt to stretch the absolute litigation privilege beyond the boundaries

established by the Ohio Supreme Court. The absolute litigation privilege applies in attorney disciplinary settings, as a "quasi-judicial" proceeding, only "because such a filing initiates the purely judicial disciplinary procedure created by this court pursuant to Article IV of the Ohio Constitution." *Hecht*, 613 N.E.2d at 588. The WAD appeal hearing, which related to whether Mr. Komorek would be removed from WAD's membership and Board of Directors, is no such proceeding. Rather, WAD is a professional trade association for private investigators and security professionals. Although statements made in those proceedings were made after the federal cases in New York were filed, and although those statements gave rise to claims in this lawsuit, they were not a part of any judicial proceeding. Accordingly, the absolute privilege applicable to judicial proceedings does not apply to the statements made in the WAD appeal hearing in question.

### iii.  Qualified Privilege and Issue Preclusion

Still, the allegedly slanderous statements made at the WAD appeal hearing may be protected by the qualified privilege for defamation claims as described above. The Court considers whether qualified privilege applies to the restatement of the WAD Ethics Complaint allegations and to the new statements made at the hearing.

First, the Court must determine the extent to which the statements made at the WAD appeal hearing are protected under the qualified privilege defense by collateral estoppel. As decided above, Plaintiffs are collaterally estopped from litigating whether the WAD Ethics Complaint is privileged. It is. And they are collaterally estopped from litigating whether actual malice was sufficiently pled to overcome that privilege. Accordingly, to the extent Plaintiffs' slander allegations are based on the restatement of the allegations in the WAD Ethics Complaint at the WAD appeal hearing, Plaintiffs are collaterally estopped from litigating whether those statements are protected under the qualified privilege defense. Plaintiffs make no argument as to why issue

preclusion would not also apply in this later context. (*See* ECF No. 45.) In addition to the statute of limitations bar, qualified privilege is thus a second independent ground for why restatement of the WAD Ethics Complaint allegations at the WAD appeal hearing are not actionable here.

But the New York federal court did not assess qualified privilege as to the new statements made by Mr. Bearden at the WAD appeal hearing. (*See* Am. Compl., ¶ 371.) Indeed, Mr. Komorek and API filed the New York federal case in November 2022, several months before the WAD appeal hearing. Regardless, its analysis of qualified privilege as to the WAD Ethics Complaint is persuasive as to the new statements at the WAD appeal hearing.

As alleged, based on the WAD Ethics Complaint, "on August 23, 2022, [Mr. Komorek was] found 'guilty' of only 2 of the 6 false allegations, [and Mr. Komorek] was expelled from the Board of Directors and removed from the membership directory and listserv until such time as Plaintiff could produce proof of an Ohio Private Investigators license." (Am. Compl., ¶ 426.) The WAD "Lower Court" found him guilty of some, but not all offenses, and the "Grievance Committee of the Whole" voted to reprimand Mr. Komorek. (*See* Am. Compl., PageID 663.) The appeal hearing that followed "was conducted by WAD members." (Am. Compl., ¶ 370.) There is no indication that the hearing was published to or attended by anyone outside of the WAD membership. For these reasons, and the reasons stated by the New York federal court in *Komorek*, 2024 WL 1483249 regarding the WAD Ethics Complaint, the new statements made during the WAD appeal hearing are protected by qualified privilege.

Accordingly, as described above, Plaintiffs must overcome the qualified privilege by pleading actual malice. Because "pleading standards in federal court are a matter of procedure, not substance," under *Erie*, this Court applies the federal pleading standard for actual malice. *Green v. Mason*, 504 F. Supp. 3d 813, 831 (S.D. Ohio 2020) (Cole, J.) (citing *Ohio Bureau of Workers'*

*Comp. v. MDL Active Duration Fund, Ltd.*, 476 F. Supp. 2d 809, 816 (S.D. Ohio 2007) ("While state law governs the burden of proving fraud at trial in a diversity action, the procedure for pleading fraud is governed by the pleading requirements of Rule 9(b))). "Under federal pleading requirements, a complaint asserting a defamation claim as to which the actual malice standard applies must set forth facts establishing that the statements were made with malice to avoid dismissal." *Green*, 504 F. Supp. 3d at 831 (quotation and citation omitted) (cleaned up).

Plaintiffs state that Mr. Bearden acted "with actual malice" in making the statements at the WAD appeal hearing. (Am. Compl., ¶ 364.) But beyond this conclusory assertion, which is insufficient under the federal pleading standard, Plaintiffs allege no facts to support their contention that Mr. Bearden acted with at least reckless disregard for the false nature of those statements. After a heavy review of the Amended Complaint, the Court determines that actual malice is not sufficiently plead as to these specific statements. Plaintiffs do not draw the Court's attention to any facts to the contrary in their response briefs. (*See* ECF Nos. 44, 45, 59.)

Additionally, Mr. Bearden's statements that Mr. Komorek was "trying to destroy" Conflict and had "shown no contrition" are not disprovable and are not actionable as defamation. *See Olthaus v. Niesen*, 232 N.E.3d 932, 940 (1st Dist. Ohio Ct. App. 2023) (noting that "federal defamation law bars claims for statements that cannot reasonably be interpreted as stating actual facts about an individual" and that the Ohio Constitution protects opinion speech). The statement that Mr. Komorek had "gone on to assault" Mr. Bearden, Mr. LaCorte, WAD, and its Board is devoid of any context from which this court could infer that the statement is disprovable or otherwise defamatory. Regardless, Plaintiffs do not plead facts sufficient to raise an inference that Mr. Bearden acted with at least reckless disregard about that statement or the statement that Mr. Komorek was responsible for five lawsuits regarding Conflict.

34

Accordingly, Plaintiffs fail to sufficiently allege actual malice to overcome the qualified privilege that protects the statements made at the WAD appeal hearing. For all the reasons stated above, Plaintiffs' claim for slander is **DISMISSED WITH PREJUDICE** as to all Defendants.

## V. Tortious Interference with Business Relations

Plaintiffs allege tortious interference with existing business relations against Conflict, Mr. LaCorte, Mr. McLaren, Mr. Bearden, Ms. Pressly, and Mr. Hill. (Am. Compl., ¶ 388.) They also allege tortious interference with prospective business relations and economic advantage against Conflict, Mr. LaCorte, Mr. Bearden, and WAD. (*Id.* ¶ 412.)

Regarding interference with existing business relations, Plaintiffs allege that Conflict, Mr. LaCorte, and Mr. Bearden engaged in malicious and frivolous administrative complaints and civil litigation against Plaintiffs in retaliation for Mr. Komorek resigning from Conflict. (*Id.* ¶ 389.) They allege Mr. Bearden "contacted a law firm client of Plaintiff and made extremely derogatory and false claims against the Plaintiff." (*Id.* ¶ 393.) Additionally, Mr. McLaren made false and derogatory statements about Mr. Komorek to a sub-contracted investigator working on a case for Mr. Komorek's client. (*Id.* ¶ 395.) And Ms. Pressly "engaged in criminal harassment of an existing client." (*Id.* ¶ 397.)

Furthermore, on March 4, 2024, "agents of a Federal Law Enforcement Agency" informed Mr. Komorek that in October 2022, a federal law enforcement agent in Texas called Conflict to speak to Mr. Komorek about a case. (*Id.* ¶ 400.) During that October 2022 call, Mr. Hill informed the agent that Mr. Komorek had been fired, was untrustworthy, and unreliable. (*Id.*) Accordingly, the agent in Texas stopped attempting to reach Mr. Komorek and stopped working with him. (*Id.*). Plaintiffs allege Mr. Hill, Conflict, and Mr. LaCorte deliberately withheld giving the agent Mr. Komorek's contact information. (*Id.* ¶ 401.)

Under their claim for tortious interference for prospective business relations, Plaintiffs allege that the administrative complaints and judicial proceedings against Plaintiffs harmed Mr. Komorek's relationship with editors of an academic book who withdrew an invitation for him to contribute to the book. (Am. Compl., ¶¶ 416–19.) Plaintiffs also allege that the WAD Ethics Complaint and the WAD adjudication process harmed his relationships with a prospective acquisition and with other business partners in the field. (*Id.* ¶¶ 420–29.)

### a. Tortious Interference Law

"The tort of interference with a business relationship occurs when a person, without privilege to do so, induces or otherwise purposefully causes a third person not to enter into or continue a business relationship with another." *Gentile v. Turkoly*, 86 N.E.3d 991, 997 (7th Dist Ohio Ct. App. 2017) (quotation and citations omitted). "The elements of tortious interference with a business relationship are: (1) the existence of a prospective business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Id.* (citing *First–Knox Nat'l. Bank v. MSD Properties, Ltd.*, 47 N.E.3d 490, 494 (5th Dist. Ohio Ct. App. 2015)). The intentional interference must also be improper. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 860 (Ohio 1999). To determine whether the intentional interference was improper, Ohio courts consider:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

*Id.*

Generally, a tortious interference claim is subject to the four-year statute of limitations for tort claims not otherwise assigned a statute of limitations under Ohio law. *See* Ohio Rev. Code

§ 2305.09(D). Conflict Defendants argue that Plaintiffs' tortious interference claims are substantially the same as the libel claims described above and that the one-year statute of limitations for libel claims should apply here. (Conflict Mot., PageID 869.) But Plaintiffs' tortious interference claims exceed and, at least in part, are distinct the libel facts alleged earlier in the Amended Complaint, so the Court applies the four-year statute of limitations. (*See* Am. Compl., ¶¶ 377–438.) The claim is not barred under that time limit.

### b. Issue and Claim Preclusion

Plaintiffs' claim for tortious interference with prospective business relations and economic advantage partially relates to the allegations in the WAD Ethics Complaint. (*See* Am. Compl., ¶¶ 420–30.) As this Court determined above, Plaintiffs are barred from relitigating the issue of whether the WAD Ethics Complaint was privileged. It is protected under the qualified privilege defense, and thus the tortious interference with prospective business advantage claim on that ground fails as a matter of law. *A&B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d at 1295 (Ohio 1995) ("[W]here claims such as tortious interference and disparagement are based on statements that are qualifiedly privileged under defamation law, the protection afforded those statements under *Jacobs* . . . must also apply in the derivative claims.") The WAD Ethics Complaint is the only ground for liability asserted against WAD under this claim, so the claim fails as to WAD as a matter of law.

Additionally, Defendants argue that both of Plaintiffs' tortious interference claims are barred under the doctrine of claim preclusion, or *res judicata*. (Conflict Mot., PageID 870; Pressly Mot., PageID 1129.) "Pursuant to the doctrine of *res judicata*, 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009) (quoting *Montana v. United States*, 440 U.S. 147, 153

(1979)). The proponent of a *res judicata* defense must prove each of the following elements:

> 1. A final decision on the merits in the first action by a court of competent jurisdiction; 2. The second action involves the same parties, or their privies, as the first; 3. The second action raises an issue actually litigated or which should have been litigated in the first action; 4. An identity of the causes of action.

*Autumn Wind Lending, LLC v. Est. of Siegel by & through Cecelia Fin. Mgmt., LLC*, 92 F.4th 630, 634–35 (6th Cir. 2024) (quoting *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992)).

In the New York federal case, which was filed in November 2022, the court dismissed with prejudice Mr. Komorek and API's tortious interference with prospective business advantage claim against Conflict. *Komorek*, 2024 WL 1483249, at *13. That claim was based on the allegations against Mr. Komorek raised in the WAD Ethics Complaint, which the New York federal court concluded is a privileged document. As this Court concluded above, Plaintiffs are precluded from relitigating that specific issue in this case.

The first claim preclusion element is met here because the New York federal court was of competition jurisdiction and rendered a final judgment dismissing the tortious interference claim with prejudice. *See Dyer v. Intera Corp.*, 870 F.2d 1063, 1066 (6th Cir. 1989) ("In the federal courts, a dismissal pursuant to Rule 12(b)(6) is considered a decision on the merits with full res judicata effect.")

The second element requires the same parties or their privies. "Privity in this sense means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented." *Sanders Confectionary*, 973 F.2d at 481. This element is met as to Conflict, Mr. LaCorte, and Mr. McLaren, who were all defendants in both actions. Additionally, the interests of Mr. Bearden and Mr. Hill were all adequately represented in that action, because their allegedly tortious statements were made as part of their employment with Conflict. Conflict

had an interest to protect itself in the litigation, including regarding claims made against its own employees acting on behalf of Conflict. This element is not met as to Ms. Pressly because she is not alleged to be a Conflict employee.

The third element requires that the relevant issues were litigated or should have been litigated in the first action. This element is met as to the allegations against Mr. McLaren and Ms. Pressly. The facts asserted in this section regarding those Defendants all relate to statements or actions taken before Plaintiffs filed the November 2022 federal case in New York. And Plaintiffs have not offered a persuasive reason why those claims should not have been brought in that case. (*See* ECF Nos. 44, 45, 59.) But as to the allegation that Conflict, Mr. Hill, and Mr. LaCorte interfered with Mr. Komorek's business relations through their October 2022 interactions with the federal law enforcement official in Texas, Plaintiffs allege that they learned about this alleged interference in March of 2024, more than a year after the New York federal case had been filed. (Am Compl., ¶¶ 399–402.) Additionally, the allegations that Conflict, Mr. LaCorte, and Mr. Bearden interfered with Plaintiffs' business by filing frivolous lawsuits involves, at least in part, the lawsuit filed by Conflict against Mr. Komorek and API in New York federal court in March 2023. *See Conflict Int'l,,* 2024 WL 1347577. Thus, Defendants have not conclusively shown that these latter two issues should have been raised in the New York federal case.

The fourth element requires an identity of the causes of action, meaning "an identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). Apart from the facts regarding the Texas law enforcement official and the March 2023 lawsuit, the underlying accusations and evidence in this case is the same. The fourth element is met.

Accordingly, under the doctrine of *res judicata*, Plaintiffs are precluded from bringing

claims for tortious interference regarding all the facts alleged above, except for the facts relating to the Texas law enforcement officer, Conflict's March 2023 lawsuit against Mr. Komorek and API, and the facts alleged as to Ms. Pressly.

### c. Sufficiency of Remaining Tortious Interference Claims

The Court addresses those three factual bases for the tortious interference claims in turn. First, Plaintiffs' tortious interference claim regarding the Texas law enforcement official only relates to work that Mr. Komorek performed for that official and his agency starting in 2020, during Mr. Komorek's employment with Conflict. (*See* Am. Compl., ¶¶ 399–401.) The "business relationship" in question, as alleged, was between the agency official and Conflict, not Mr. Komorek and API (which did not yet exist). "An essential element of the tort is interference by someone who is not a party or agent of the party to the contract or relationship at issue." *Dorricott v. Fairhill Ctr. for Aging*, 2 F. Supp. 2d 982, 989–90 (N.D. Ohio 1998) (Gwin, J.) (citing *Erebia v. Chrysler Plastic Products Corp.*, 891 F.2d 1212, 1216 (6th Cir. 1989)). Additionally, Plaintiffs have failed to allege facts to raise an inference that (1) Mr. Komorek had an existing or prospective business relationship with that official and his agency, (2) the relevant Defendants knew that such a relationship existed, and (3) any damages arose from this specific incident. Accordingly, Plaintiffs' tortious interference claims are not sufficiently pled as to those allegations.

Second, the allegation regarding Ms. Pressly's criminal harassment is vague, and Plaintiffs fail to allege any facts about her "harassment" or how they relate to Plaintiffs' existing or prospective business relationships. (*See* Am. Compl., ¶¶ 387–438.) The claims are insufficiently stated on that allegation.

Third, the claims based on alleged malicious and frivolous litigation fail as a matter of absolute privilege and on the insufficiency of the allegations. Again, "under the doctrine of

absolute privilege in a judicial proceeding, a claim alleging that a defamatory statement was made in a written pleading does not state a cause of action where the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which it appears." *Surace*, 495 N.E.2d at 943. And "[w]here a claim such as tortious interference with contract is based on statements that are qualifiedly privileged under defamation law, the protection afforded those statements also apply to the derivative claim." *Mawaldi v. St. Elizabeth Health Ctr.*, 381 F. Supp. 2d 675, 690 (N.D. Ohio 2005) (Gwin, J.) (citing *El–Shiekh v. Nw. Ohio Cardiology Consultants*, Nos. L-99-1380, CI-97-4238, 2000 WL 1298761 (6th Dist. Ohio Ct. App. Sept. 15, 2000)). Absolute privilege thus applies to the tortious interference claims insofar as they are based on allegedly defamatory statements made in the New York federal cases and regarding the existence of those actions. Additionally, Plaintiffs fail to identify any specific defamatory statements that were made as part of the litigation and how they would be connected to Plaintiffs' business interests.

To recap, Plaintiffs' tortious interference claims fail. First, to the extent they rely on the allegations in the WAD Ethics Complaint, the claims fail as a matter of issue precision on the issue of qualified privilege. Second, regarding most of the allegations in the tortious interference section of the Amended Complaint, Plaintiffs' claims are barred under claim preclusion. Third, regarding the few allegations that make it past that barrier, the alleged facts fail to state a claim upon which relief can be granted. Accordingly, the claims for tortious interference with existing and prospective business relations are **DISMISSED WITH PREJUDICE**.

## VI.    Intentional Infliction of Emotional Distress ("IIED")

Plaintiffs allege IIED under Ohio common law against Conflict, Mr. LaCorte, Mr. Bearden, the Bearden Firm, BIA, Ms. Pressly, Mr. McLaren, Mr. Thompson, Mr. Tapling, Mr. Hill, WAD, and Does 1-10. (Am. Compl., ¶ 440.) Plaintiffs allege that these Defendants knew that Mr.

Komorek "is a 100% permanent and total disabled combat veteran." (*Id.* ¶ 441.) "Several Defendants" also personally witnessed Mr. LaCorte's "outbursts" toward Mr. Komorek and "were aware of the extreme negative and emotional impact this had on" Mr. Komorek. (*Id.* ¶ 442.) They also allege a claim for IIED regarding the "deliberate and malicious campaign of harassment, intimidation and smear of reputation" undertaken by Defendants as described throughout the Amended Complaint. (*Id.* ¶¶ 444–45.) Mr. Komorek claims he suffered $10 million in emotional distress damages as a result of these and other allegedly malicious actions. (*Id.* ¶ 447.)

Under Ohio law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Yeager v. Loc. Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 453 N.E.2d 666, 671 (1983), *abrogated on other grounds*, *Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007). Regarding the "extreme and outrageous conduct" requirement,

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*Id.* (quoting Restatement (Second) of Torts § 46 cmt. d (Am. L. Inst. 1965)).

To the extent Plaintiffs' IIED claim is based on Defendants' alleged defamation of Plaintiffs, the claim is time-barred. "Ordinarily, claims for intentional infliction of emotional

distress are subject to a four-year statute of limitations." *Cleavenger v. B.O.*, 184 N.E.3d 968, 975–76 (9th Dist. Ohio Ct. App. 2022). But "[w]hen the essential character of a claim for [IIED] consists of conduct that is, in substance, another tort, the statute of limitations for the other tort governs." *Id.* at 976 (citing *Doe v. First United Methodist Church*, 629 N.E.2d 402, 407 (Ohio 1994), *superseded by statute on other grounds*, *Pratte v. Stewart*, 929 N.E.2d 415 (Ohio 2010)). Thus, "when a claim for intentional infliction of emotional distress is based upon conduct actionable as a claim for defamation, the one-year statute of limitations applies." *Id.* Because Plaintiffs do not allege IIED arising out of any conduct that occurred within one year before March 15, 2024, the claim is time-barred insofar as it relies on allegations of defamation.

Regarding the remaining allegations, Plaintiffs do not plead facts to raise a plausible inference that Defendants' conduct was "extreme and outrageous" under Ohio law. Setting aside the accusations based in defamation, Plaintiffs only refer to Mr. LaCorte's alleged "outbursts" toward Mr. Komorek and the fact other Defendants witnessed those outbursts. (Am. Compl., ¶ 442.) As alleged, these facts are insufficient to raise a plausible inference that Mr. LaCorte's or any other Defendants' actions were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Yeagar*, 453 N.E.2d at 671.

Furthermore, although Plaintiffs allege the conclusory assertion that these outbursts caused Mr. Komorek severe emotional distress, Plaintiffs fail to allege facts to support that assertion. The only factual references in the Amended Complaint to Mr. Komorek's severe emotional distress relate to Mr. Komorek "going to the appropriate government agencies and reporting" his belief that Mr. LaCorte had failed to disclose his 2000 arrest in Cuba on an internal visa questionnaire. (*See* Am. Compl., ¶¶ 170, 236.) That allegation is insufficient to raise an inference of severe emotional harm.

On these grounds, Plaintiffs' IIED claim is **DISMISSED WITH PREJUDICE**.

## VII. Invasion of Privacy

Plaintiffs allege invasion of privacy against Conflict, Mr. LaCorte, Mr. Bearden, the Bearden Firm, BIA, Ms. Pressly, Mr. McLaren, and Mr. Thompson. (Am. Compl., ¶ 457.) "In Ohio, an actionable invasion of privacy is (1) the unwarranted appropriation or exploitation of one's personality; (2) the publicizing of one's private affairs with which the public has no legitimate concern; or (3) the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. *Moran v. Lewis*, 114 N.E.3d 1254, 1257 (8th Dist. Ohio Ct. App. 2018) (citing *Housh v. Peth*, 133 N.E.2d 340 (Ohio 1956), paragraph two of the syllabus). Plaintiffs raise two theories of liability: unreasonable intrusion upon seclusion and public disclosure of private affairs. (*See id.* ¶¶ 460–62.)

Plaintiffs' intrusion upon seclusion claim is based on Defendants' requests to obtain Mr. Komorek's military records. (Am. Compl., ¶ 460.) Under Ohio law, "a defendant may be liable for intrusion upon another's seclusion if the defendant intentionally intrudes upon the 'solitude or seclusion' or the private affairs or concerns of another, and if such an intrusion would be highly offensive to a reasonable person." *Moran*, 114 N.E.3d at 1257. As discussed above, Defendants' military records request was not in violation of any laws. Rather, it was a public records request made on an official U.S. Government form through an official process established for the disclosure of documents in compliance with the Privacy Act of 1974 and FOIA. This formal, legal, and public records disclosure process is not highly offensive to a reasonable person. Additionally, U.S. Government records subject to public disclosure under federal law are not "private affairs." Accordingly, Plaintiffs' intrusion upon seclusion claim fails.

Additionally, Plaintiffs allege that Defendants made "false and malicious statements as to

Komorek's military service." (Am. Compl., ¶ 461.) The Court construes this allegation as a claim

for public disclosure of private facts. To establish such a claim under Ohio law, a plaintiff must

prove:

> (1) that there has been a public disclosure; (2) that the disclosure was of facts
> concerning the private life of an individual; (3) that the matter disclosed would be
> highly offensive and objectionable to a reasonable person of ordinary sensibilities;
> (4) that the disclosure was intentional; and (5) that the matter publicized is not of
> legitimate concern to the public.

*Templeton v. Fred W. Albrecht Grocery Co.*, 72 N.E.3d 699, 701 (9th Dist. Ohio Ct. App. 2017).

Plaintiffs have failed to allege that the statements were communicated "to the public at

large, or to so many persons that the matter must be regarded as substantially certain to become

one of public knowledge." *Seta v. Reading Rock, Inc.*, 654 N.E.2d 1061, 1068 (12th Dist. Ohio Ct.

App. 1995). To the extent Plaintiffs allege that Defendants truthfully disclosed the contents of Mr.

Komorek's military records that were obtained through a public records request, that disclosure is

a matter of legitimate concern to the public—such disclosures are authorized under federal law.

Additionally, such true information cannot be a new public disclosure because those facts are

already a matter of public record. *See Killilea v. Sears, Roebuck & Co.*, 499 N.E.2d 1291, 1295

(10th Dist. Ohio Ct. App. 1985) ("There is no liability when the defendant merely gives further

publicity to information about the plaintiff that is already public.") Third, to the extent Plaintiffs

allege that the Defendants' statements about Mr. Komorek's military history were false, those

statements are not "facts" about Mr. Komorek's private life. Rather, such false accusations would

potentially be actionable as defamation, which is discussed earlier in this Opinion and Order.

Accordingly, Plaintiffs' claim for invasion of privacy is **DISMISSED WITH**

**PREJUDICE**.

## VIII.    Civil Conspiracy

Last, Plaintiffs allege common law civil conspiracy against all Defendants. "'In Ohio, a civil conspiracy consists of the following: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy.'" *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 446 (6th Cir. 2012) (quoting *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 629 N.E.2d 28, 33 (8th Dist. Ohio Ct. App. 1993)). Plaintiffs' claim fails because, as set out at length in this Opinion and Order, the Amended Complaint fails to allege an unlawful act sufficient to survive Defendants' Motions to Dismiss, let alone one that exists apart from the alleged conspiracy.

Accordingly, Plaintiffs' civil conspiracy claim is **DISMISSED WITH PREJUDICE**.

## CONCLUSION

For the reasons stated in this Opinion and Order, the Court **GRANTS** Conflict Defendants' Motion to Dismiss (ECF No. 36), **GRANTS** Bearden Defendants' Motion to Dismiss (ECF No. 37), and **GRANTS** Ms. Pressly's Motion to Dismiss (ECF No. 58.) The Court **DENIES as moot** Defendants' previous Motions to Dismiss relating to the original complaint (ECF Nos. 24, 25, 26) and Plaintiffs' Motion to Disqualify Counsel (ECF No. 31). All of Plaintiffs' claims are **DISMISSED WITH PREJUDICE**. This holding includes the claims against Does 1–10, WAD, and Mr. Heales because the claims against them fail as a matter of law or are insufficiently pled.

The Clerk is **DIRECTED** to enter judgment and to terminate this case on the Court's docket.

**IT IS SO ORDERED.**

3/29/2025                                    s/Edmund A. Sargus, Jr.
DATE                                          EDMUND A. SARGUS, JR.
                                                  UNITED STATES DISTRICT JUDGE